HARBOTTLE-BAILEY COAL COMPANY *v.* BOLTON-HALE COAL COMPANY.

Opinion delivered November 14, 1921.

RAILROADS—USE OF PRIVATE SPUR.—Where a coal company, under agreement with a railway company, constructed a private spur, which is subsequently assigned to appellants, with the railroad company's consent, appellants had the exclusive right to use the spur.

Appeal from Franklin Chancery Court, Ozark District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT OF FACTS.

The Bolton-Hale Coal Company, a partnership, brought this suit in equity against the Harbottle-Bailey Coal Company, a domestic corporation, to enjoin it from interfering with the plaintiff's right to load coal on a

certain spur track connected with the tracks of the Missouri Pacific Railway Company. The railway company was also made a defendant to the suit.

Both the plaintiffs and the defendants are engaged in mining coal near the spur track in question on lands which they have leased from the Douglass Coal Company. The lease of the Douglass Coal Company to the Harbottle-Bailey Coal Company was executed on the 6th day of November, 1918, and continues for the period of seven years. Among the property embraced in the lease is described, "the railroad mine tracking". On the 23rd day of October, 1914, the Douglass Coal Company had made an agreement with the St. Louis, Iron Mountain & Southern Railway Company for the construction of said spur track for the purpose of loading the coal which it mined.

The agreement provides that it shall be binding upon the successors and legal assigns of the Railway Company but shall be strictly personal to the "industry", and that neither this agreement nor any interest herein, nor any right hereunder, shall be assigned or transferred without the consent of the chief operating officer of the railway company.

The object of the agreement was to provide a spur track which would connect the mine of the Douglass Coal Company with the tracks of the railway company. The word "industry", as used in the agreement, means the Douglass Coal Company. The track is 92 feet in length on the property of the "industry." On November 6, 1919, the Douglass Coal Company transferred all their rights in the agreement with the St. Louis, Iron Mountain & Southern Railway Company to the Harbottle-Bailey Coal Company. The latter company has operated its mine and loaded the coal therefrom on the cars on the spur track under the terms of the agreement made between the railway company and the Douglass Coal Company. The plaintiffs have obtained leases from the Douglass Coal Company of a later date than that obtained by the defendant.

According to the evidence adduced by the plaintiffs there was room enough for them and the defendant both to load cars from their mines on the spur track in question.

According to the evidence adduced by the defendant, it permitted the plaintiffs and their grantors to load cars on the spur track in question under a verbal agreement to that effect.   It was the understanding between the parties that this agreement was to run at the will of the defendant.   The capacity of the defendant's mine was increased until there was not room enough on the spur track in question to load the output of the plaintiff's mine and that of the defendant, and the defendant forbade the plaintiffs to load any more coal on cars on the spur track.   Hence this lawsuit.

The chancellor found the issues in favor of the plaintiffs, and entered a decree whereby the plaintiffs were to use the spur track in question for two days in the week and the defendant the remainder of the week.   To reverse that decree, the defendant has duly prosecuted this appeal.

*Willard Pendergrass, G. C. Carter* and *Dave, Partain,* for appellant.

We are unable to find upon what theory the chancellor based his decree.   It could not be sustained on the ground that appellee had an easement over appellant's property and the spur.   89 Ark. 309; 88 Ark. 148; 64 Ark. 339.   Nor upon the ground that appellee had a license to use the property of appellant.   19 Ark. 23; 64 Ark. 339.   There is no basis of law or fact (as the use granted to appellee by appellant was only a permissive one) upon which to sustain the decree.

*J. D. Benson,* for appellee.

The demurrer was properly overruled, as the complaint stated a cause of action.   72 Ark. 29; 102 Ark. 287.

No conveyance of the spur could have been made to the appellant by Douglas, without the consent in writing of the railroad company, and this was never given.

The decree, based upon the findings of fact by the chancellor, unless clearly against the preponderance of the evidence, should be affirmed.   136 Ark. 195.   Here the decree is supported by the evidence.

HART, J. (after stating the facts).   It appears from the record that the Douglass Coal Company transferred their mining lease, and sold to the defendant, Harbottle-Bailey Coal Company, their mine fixtures on the 6th day of November, 1918. At that time the Douglass Coal Company was operating its mines under an agreement with the St. Louis, Iron Mountain & Southern Railway Company for the construction of a spur track upon which to load coal from their mine. The spur track was constructed by the Douglass Coal Company under an agreement with the Railway Company and extended out on the land of the Douglass Coal Company 92 feet.   On the 6th of November, 1918, the Douglass Coal Company, a partnership, transferred their interest in their agreement with the railway company to the defendant.

It is claimed by counsel for the plaintiffs that this transfer is void because, under the terms of the agreement between the railway company and the Douglass Coal Company, the latter could not assign their interest in the contract without the written consent of the railway company.   This provision, however, was evidently inserted for the benefit of the railway company and might be waived by it.   The railway company permitted the defendant to use the spur track under the terms of the original agreement between the railway company and the Douglass Coal Company.   It thereby waived the provision of the contract that no assignment thereof should be made without the written consent of the railway company.   Therefore, the defendant succeeded to the rights of the Douglass Coal Company in the contract with the railway company and had the right to the exclusive use of the spur track in question.   The plaintiffs were permitted to load coal from their mine on cars placed on this spur track

under a verbal permission to do so. This was revocable at the will of the party granting it. It does not appear that the Douglass Coal Company or the defendant ever entered into an agreement with the plaintiffs or their grantors to use the spur track to load their coal on cars for any definite length of time.

According to the evidence for the defendant, the plaintiffs were permitted to use the track so long as it did not interfere with the business of the defendant. When the business of the defendant increased to such an extent that it was necessary for it to use the spur track at all times to load its own coal, it refused to allow the plaintiffs to use it any longer to load their coal. This the defendant had a right to do, and the plaintiffs had no right to use the spur track after their license to use it was revoked by the defendant.

As we have already seen, the contract between the railway company and the Douglass Coal Company for the construction and use of the spur track was transferred by the Douglass Coal Company to the defendant, and the latter continued to operate its coal mine and use the spur track under the provisions of the agreement. The railway company, having consented to the transfer, is in no attitude to object that the transfer was not in writing, and it does not do so.

The plaintiffs have no right to object; for they are not parties to the contract, and, no matter how great their necessities may be, they have no right to use the spur track to load their coal unless by the consent of the defendant. The spur track is a private one, and not an industrial track open to the use of the public.

Therefore, the court erred in making any finding in favor of the plaintiffs, and the decree will be reversed with directions to the chancery court to dismiss the bill of the plaintiffs for want of equity.